IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS JULY 17, 2007

## WILLIAM EDWARD HARGROVE v. MERRIELLEN HARGROVE a/k/a MERRIELLEN WARSTLER

**Direct Appeal from the Chancery Court for Benton County**
**No. 9533      Ron E. Harmon, Judge**

_____

**No. W2007-00538-COA-R3-CV - Filed November 28, 2007**

_____

This is a post-divorce case involving disputes over obligations in the Marital Dissolution Agreement and modification of the visitation schedule contained in the permanent parenting plan. Husband filed for divorce from Wife, and on August 25, 1998, the chancery court entered a final decree of divorce that incorporated the Marital Dissolution Agreement. The permanent parenting plan was filed on February 12, 2004. Concerning Husband and Wife's minor son, born January 7, 1990, the residential schedule in the permanent parenting plan provided that Husband would be the primary residential parent and Wife would be responsible for the child every other weekend and during certain holidays. As to property division, the Marital Dissolution Agreement required Husband to transfer one-half of his pension plan to Wife. Concerning the marital home, Wife agreed to execute a quitclaim deed to Husband conveying her interest to Husband simultaneously with Husband paying her $15,000. After a contempt hearing, the court modified the parenting schedule; found that Wife was entitled to one-half of Husband's pension, but not one-half of Husband's annuity; and found that Husband had satisfied the $15,000 obligation. Wife appeals pro se, arguing that the modification of the residential schedule found in the parenting plan is void because the court did not follow Tenn. Code Ann. § 36-6-405(a). Wife also argues that the parties' intent was that she was to receive half the annuity along with half the pension. Finally, Wife contends that Husband did not meet his burden of proof to establish the defense of accord and satisfaction. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and BEN H. CANTRELL, SP.J., joined.

Merriellen Warstler, Stevenson, AL, Appellant, *pro se*

Terry J. Leonard, Camden, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

The chancery court in Benton County, Tennessee, entered a final decree awarding William Edward Hargrove ("Husband" or "Appellee") an absolute divorce from Merriellen Elmore Hargrove, a/k/a Merriellen Elmore Warstler ("Wife" or "Appellant"), on August 25, 1998. In this final decree, the court approved, ratified, and incorporated the Marital Dissolution Agreement ("MDA") that the parties previously filed with the court on May 6, 1998. Per the MDA, Husband was to keep the marital home and 4.3 acres, and in exchange, he was to pay Wife $15,000: "Wife agrees to execute a quitclaim deed conveying her interest to said Husband simultaneously with her receiving $15,000." As to the division of Husband's pension plan, Amended Exhibit III of the MDA reads that "the husband shall receive as his sole and absolute property one-half of his pension plan with Boilermaker-Blacksmith National Pension Trust . . . ."[1] Amended Exhibit II listing Wife's awarded property provides that "the wife shall receive one-half of the husband's pension plan with Boilermaker-Blacksmith National Trust . . . . Said one-half being approximately $25,048.87."

The MDA also dealt with child custody and visitation, but the permanent parenting plan was filed later on February 12, 2004.[2] The parenting plan named Husband as the primary residential parent. Wife received visitation with the child every other weekend. The permanent parenting plan also set out the parent and child holiday and vacation schedule. The parents were to alternate and divide the Christmas vacation period; for Thanksgiving, Husband kept the child in even numbered years and Wife in odd numbered years. Finally, the parenting plan mandated that neither the Husband nor the Wife make any negative statements about the other parent in front of the child.

Several years later, on September 25, 2006, Wife filed a motion to enforce the MDA obligations. Wife claimed that Husband had failed to pay her one-half of Husband's retirement funds; furthermore, Wife claimed that Husband had only paid her $11,000 of the $15,000 owed for the marital residence. Wife also filed a petition for contempt, alleging that Husband had violated the MDA in several respects, including making negative statements about Wife to the child. Husband filed a response to the petition for contempt on October 5, 2006, and also filed a counter motion. Responding to the allegation concerning the $15,000, Husband stated that "obviously she [Wife] would not have executed a Quitclaim Deed until or unless she got all of her monies." Husband also asserted the affirmative defense of accord and satisfaction, attaching a copy of the

---

[1] It is unclear from the record why the parties amended both Exhibit II and III of the MDA, but these amended exhibits were filed on August 8, 1998, the same date of the divorce decree.

[2] Why the parties filed a permanent parenting plan in 2004 is unclear from the record. The parenting plan states that "[t]his plan was ordered by the Court."

quitclaim deed to the motion.[3]  Wife then filed a motion to supplement her petition for contempt, to which Husband filed a response.

The court then took up the issues raised in Wife's petition for contempt and various subsequent motions filed by both parties in a hearing on November 6, 2006.  At the motion hearing, Husband's counsel moved for an in camera hearing so the court could discuss the visitation situation with the then sixteen year old child.  Based on this in camera hearing with the child, the judge stated in his order dated January 3, 2007, that the child "shall visit Merriellen Hargrove, a/k/a Merriellen Warstler, during Thanksgiving and Christmas Holidays and the remainder of the year shall be at the child's discretion."  The court based this decision on the following:

> [The child ] has a life of his own and he's involved in a lot of things that don't coincide well with traveling.  He has assured me that if I leave it in his discretion that he will visit his mother, but he doesn't want to be made to go every other weekend . . . .  He doesn't want to be a problem, and he doesn't want to have a problem.  So I think that would be well if the adults would follow along in that and not have to place any additional pressure . . . .  We will leave visitation in his discretion.

Also, the judge's order declared that Husband had fully satisfied the $15,000.00 constituting Wife's one-half interest in the marital home.   As to the disputed retirement accounts, the judge found that Wife was entitled to "[t]he Boilermakers National Pention [sic] Trust and that a Qualified Domestic Relations Order shall be entered within 60 days"; however, Wife "is not entitled to the Boilermakers National Annuity Trust."

## II.  ISSUES PRESENTED

Appellant has timely filed her notice of appeal and presents the following three issues for review:

1.     Whether the lower court erred in ordering the modification of the residential sharing schedule contained in the permanent parenting plan without following the procedure set forth in Tenn. Code Ann. § 36-6-405(a)?

2.     Whether the lower court erred in interpreting the MDA as denying Wife entitlement to one-half of Husband's Boilermakers National Annuity Trust?

3.     Whether the lower court erred in finding that Husband satisfied his burden of proof for the affirmative defense of accord and satisfaction?

---

[3]  The quitclaim deed was not included in the record.

For the following reasons, we affirm.

## III. STANDARD OF REVIEW

On appeal, a trial court's findings of fact are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001). Evidence preponderates against a trial court's finding of fact when it supports another finding of fact with greater convincing effect. ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law *de novo* with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A.
### *Modification of Residential Schedule in the Permanent Parenting Plan*

On appeal, Appellant asserts that the chancery court erred when it modified the residential sharing schedule in the permanent parenting plan without following the procedure for modification as proscribed in Tenn. Code Ann. § 36-6-405(a). Furthermore, Appellant argues that because Tenn. Code Ann. § 36-6-405(a) was not followed, she lacked notice that visitation issues would be decided and thus, the order is a violation of her due process rights and an unwarranted interference with her fundamental parental rights. We affirm.

A permanent parenting plan is "a written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule . . . ." Tenn. Code Ann. § 36-6-402(3) (2005). A residential schedule "is the schedule of when the child is in each parent's physical care, and it shall designate the primary residential parent; in addition, the residential schedule shall designate in which parent's home each minor child shall reside on given days of the year, including provisions for holidays . . . ." Tenn. Code Ann. § 36-6-402(5) (2005). The permanent parenting plan must include a residential schedule: "The court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child." Tenn. Code Ann. § 36-6-402(8)(b) (2005). The statute lists several factors to help the court in determining the residential schedule, including "The reasonable preference of the child if twelve (12) years of age or older . . . . The preference of older children should normally be given greater weight than those of younger children." Tenn. Code Ann. § 36-6-402(8)(b)(14) (2005).

In 2000, the legislature amended Title 36 of the Tennessee Code pertaining to parenting plans: "Any final decree or decree of modification in an action for absolute divorce . . . *shall*

-4-

incorporate a permanent parenting plan." 2000 Tenn. Pub. Acts 889 (codified at Tenn. Code Ann. § 36-6-405) (emphasis added). Prior to this change in 2000, a party could propose a permanent parenting plan along with the MDA, the answer, or at any time before final judgment, but the submission was not mandatory: "The parties, *by consent*, *may* propose a permanent parenting plan for the court approval." 1997 Tenn. Pub. Acts 557 (codified at Tenn. Code Ann. § 36-6-403 (June 24, 1997)) (emphasis added). Also in 2000, the legislature amended the law pertaining to modification of the permanent parenting plan:

> In a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the petition for modification and with the response to the petition for modification. Such plan is not required if the modification pertains only to child support. The obligor parent's proposed parenting plan shall be accompanied by a verified statement of that party's income . . . . The process established by § 36-6-404(b) shall be used to establish an amended permanent parenting plan or final decree or judgment.

2000 Tenn. Pub. Acts 889 (codified at Tenn. Code Ann. § 36-6-405 (Jan. 1, 2001)).

This Court dealt with similar issues concerning modification of visitation in a permanent parenting plan in *Casby v. Casby*, No. W2001-02073-COA-R3-CV, 2001 Tenn. App. LEXIS 546, at *8–10 (Tenn. Ct. App. Jan. 16, 2002). In *Casby*, the husband filed for divorce in 1997, but no permanent parenting plan was submitted. *Id.* at *2, 10. Subsequently, in 2001, the husband filed a motion to modify the visitation. The court modified its previous decree and awarded custody to the husband, including a permanent parenting plan fully outlining the rights of the parents and the new visitation schedule. *Id.* at *8. The wife argued that the court did not follow the proper procedure for modification of the permanent parenting plan as described in Tenn. Code Ann. 36-6-405(a). *Id.* at *9. We rejected this argument, because the husband was attempting to modify the final decree of divorce, not a permanent parenting plan. The husband could not have been trying to modify the permanent parenting plan at the hearing in question, as no permanent parenting plan existed at that time.[4] *Id.* at *10. More directly on point to the case at hand is *Mays v. Mays*, No. E2001-02630-COA-R3-CV, Tenn. App. LEXIS 951, at *5–10 (Tenn. Ct. App. Nov. 22, 2002). In *Mays*, the parties were divorced in 1999, with the MDA naming the wife as the primary custodial parent. *Id.* at *1. The husband filed a motion to modify custody and also submitted a proposed parenting plan. In 2001, the court incorporated this parenting plan with its order, changing the primary residential parent designation to the husband. *Id.* at *2. The wife argued on appeal that the lower court should have dismissed the motion to modify because the husband failed to include a verified statement of income along with the proposed parenting plan as proscribed by Tenn. Code Ann. § 36-6-405(a). We rejected this argument because "[t]his was not a proceeding to amend a parenting plan, there was no plan filed in the original divorce case." *Id.* at *9–10 (citing *Casby v.*

---

[4] We pointed out that since the court issued the final decree of divorce before the legislature required parenting plans, no plan existed.

*Casby*, No. W2001-02073-COA-R3-CV, 2001 LEXIS 546, at *10 (Tenn. Ct. App. Jan. 16, 2002)). More importantly, the wife failed to raise the issue at the trial level; therefore, she could not raise the issue for the first time on appeal. ***Id.*** at *9 (citing *Dailey v. Dailey*, 635 S.W.2d 391 (Tenn. Ct. App. 1981).

The aforementioned cases are distinguishable from the case at bar, in that there is a permanent parenting plan in this case. The issue of waiver discussed in ***Mays***, however, is applicable to the case at hand. In the present case, Wife did not raise any objection at the hearing.[5] Husband's counsel moved for an in camera hearing, and Wife did not object. The court later stated that "[unless you have some objection, I'm going to speak to this young man [the child]. Do you have an objection to that?" Wife told the court no. "Tennessee courts have long recognized that, in order to preserve an issue on appeal, an objection must be made in a timely manner before the trial court." ***Barker v. Barker***, No. W2003-01989-COA-R3-CV, 2004 WL 1908802, at *5 (Tenn. Ct. App. Mar. 17, 2004) (quoting *Eldridge v. Eldridge*, No.01A01-9808-CV-00451, 1999 WL 767792, at *3 (Tenn. Ct. App. Sept. 29, 1999)). As to the argument that Wife lacked notice, we also disagree. In Husband's response to Wife's supplemental motion for contempt filed on November 6, 2006, Husband made a motion "for an In Camera Examination of the Parties minor child so as to allow the child to express his preference as to future visitation with the Plaintiff [Wife]." Although this was the same day as the hearing, Wife was on notice that Husband desired to modify the visitation. Wife had an opportunity to object to the in-camera hearing, but did not do so.

Wife also contends that visitation rights are fundamental and that the order changing the visitation schedule "has the potential to severely interfere" with her fundamental parental rights. Wife relies on ***Stubblefield v. State ex rel. Fjelstad***, 171 Tenn. 580, 587, 106 S.W.2d 558, 560 (Tenn. 1937), and ***In re M.J.B.***, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004). However, these cases are not on point. ***Stubblefield*** dealt with a custody dispute between a parent and a non-parent, and ***In re M.J.B.*** dealt with proceedings to terminate parental rights as prescribed by Tenn. Code Ann. § 36-1-113 (2000), which completely severs the parent-child relationship. Wife's parental rights, however, have not been terminated; on the contrary, the child will still visit Wife on the holidays and weekends at the child's discretion. The court presumably made the change based on the best interest of Husband's and Wife's sixteen year old son, taking into consideration the fact that the child has a busy school, work, and social calender that did not coincide well with out of state travel.[6] While it is true that "The general assembly recognizes the fundamental importance of the parent-child relationship to the welfare of the child," the legislature also points out that by its very nature, divorce

_____

[5] Wife argues that because Husband's attorney told the judge there was no motion, that is sufficient to preserve the issue on appeal. We disagree. It appears Husband's attorney was referencing the restraining order concerning Wife's husband, not pointing out that he should have, but did not, raise a motion to modify the permanent parenting plan. And even if Husband's attorney were referencing the lack of a motion to modify the residential schedule in the parenting plan, that still does not amount to Wife raising an objection. *See generally **Barker v. Barker***, No. W2003-01989-COA-R3-CV, 2004 WL 1908802 (Tenn. Ct. App. Mar. 17, 2004).

[6] Wife failed to argue on appeal that there has not been a material change in circumstance or that the change in visitation is not in the best interest of the child. Thus, we will not delve into those issues.

"means that neither parent will have the same access to the child as would have been possible had they been able to maintain an intact family." Tenn. Code Ann. § 36-6-401 (a) (2005). We reject Wife's argument.

## B.
### MDA Property: Husband's Annuity

Wife argues that the lower court erred when it specifically ordered that she was not entitled to Husband's Boilermakers National Annuity Trust. Wife asserts that this finding goes against the weight of the evidence, and that the parties, when entering into the MDA, intended to divide the annuity along with the pension. We affirm.

"An MDA is a contract and as such generally is subject to the rules governing construction of contracts." **Johnson v. Johnson**, 37 S.W.3d 892, 896 (Tenn. 2001) (citing *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993); *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998)). In fact, the MDA in this case specifically says "it is the decision of the parties . . . to enter into a *contract* for the settlement of such rights and obligations, not only for the present, but for the future, it being the intention that such contract will be effected with respect to all of their property . . . ." (emphasis added). Contract interpretation is a question of law. **Buettner v. Buttner**, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005) (citing *Guiliano v. Cleo*, Inc., 995 S.W.2d 88, 95 (Tenn. 1999)). Courts should construe an MDA's provisions like any other contract, with the goal being to "ascertain and give effect to the parties' intentions." **Elliott v. Elliott**, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004) (citing *Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn. 2000)). The court must determine the intent at the time the parties executed the contract, "based upon the usual, natural, and ordinary meaning of the language they employed." **Buettner**, 183 S.W.3d at 358–359 (citing *Davidson v. Davidson*, 916 S.W.2d 918, 923 (Tenn. Ct. App. 1995)). If the provision in question is plain and unambiguous, then the court's function is to interpret the provision as written, "rather than according to the unexpressed intention of one of the parties." **Honeycutt v. Honeycutt**, 152 S.W.3d 556, 561–62 (Tenn. Ct. App. 2003). Ambiguity exists in a contract "only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on language used to find ambiguity where none exists." **Greene v. Greene**, No. E2005-01394-COA-R3-CV, 2006 WL 548241, at *3 (Tenn. Ct. App. Mar. 7, 2006) (citing *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)). The words the parties have chosen to express their intent in the contract should be read in their plain, popular, and ordinary sense. **Id.** (citations omitted).

We must begin our analysis by examining the language used by the parties in the MDA. Exhibit II spells out Wife's awarded property, and Exhibit III spells out Husband's. Exhibit III of the MDA states that "the husband shall receive as his sole and absolute property his *annuity* and *retirement account*." (emphasis added). However, both Exhibit II and III were amended by the parties on August 21, 1998, the date of the final divorce decree. The Amended Exhibit III reads that "the husband shall receive as his sole and absolute property one-half of his *pension* plan with Boilermaker-Blacksmith National Pension Trust through the year 9-30-97. The husband shall receive all benefits from January 1, 1998." (emphasis added). Exhibit II listing Wife's sole property does not mention Husband's retirement account; Amended Exhibit II provides that "the wife shall

receive one-half of the husband's *pension* plan with Boilermaker-Blacksmith National Trust through September 30, 1997. Said one-half being approximately $25,048.87." (emphasis added).

The parties used the specific word "annuity" in the original exhibits, and had they meant "annuity" in the amended exhibits, then they could have simply continued with the same word choice. The parties removed from the amended exhibits the broader term "retirement benefits." In *Johnson v. Johnson*, 37 S.W.3d 892, 897 (Tenn. 2001), the Tennessee Supreme Court found that "all military retirement benefits" used by the parties in the MDA "has a usual, natural, and ordinary meaning. In the absence of express definition, limitation, or indication to the contrary in the MDA, the term comprehensively references all amounts to which the retiree would ordinarily be entitled as a result of retirement from the military." (citations omitted). In the present case, had the parties not amended the MDA and changed the sole property division from "retirement benefits" to "pension," wife would have a stronger argument that she should receive both the pension and the annuity. But that is not the case. The parties changed the broad language of "retirement benefits" to the narrow, specific language of "pension," and entirely excluded the term "annuity."

Wife argues that the annuity mentioned in Husband's original sole property list was included in Husband's amended property list, just that the parties used the more formal name of "Boilermaker-Blacksmith National Pension Trust" instead of using the term "annuity." Wife supports this by pointing out that the annuity was not specifically listed in Husband's amended sole property list. This argument falls short because the Amended Exhibit III has a catch-all provision that "husband shall receive all personal property of a strictly personal nature." Thus, just because the annuity is not specifically listed as Husband's personal property, that does it mean that it is Wife's property by default.

Instead, the issue must be resolved by looking to the plain language of the MDA concerning the pension, and if the language is unambiguous, we must interpret it as written rather than "according to the unexpressed intention" of Wife. *See **Honeycutt v. Honeycutt***, 152 S.W.3d 556, 562 (Tenn. Ct. App. 2003). It appears that Wife is arguing that the term "pension" is ambiguous, contending that "[i]t is not uncommon for lay people to use terms such as pension, retirement account[,] and annuity interchangeably." Wife relies on ***Woody v. Woody***, No. E2001-02078-COA-R3-CV, 2002 Tenn. App. LEXIS 772 (Tenn. Ct. App. Oct. 29, 2002). In ***Woody***, the husband alleged that the trial court erred by amending a final judgment of divorce to include one half of his pension to the wife as part of her marital property award. *Id.* at *2. The divorce did not include an MDA; rather, the trial court provided in the judgment that the parties were to divide equally the stock in the husband's retirement package. *Id.* Thereafter, the court issued the QDRO described as the "Stock Bonus Plan, Stock Savings and Retirement Income Plan, and Employee Stock Ownership Plan." *Id.* at *3. The wife then filed a petition for declaratory relief requesting the court declare her rights under the final divorce decree, and also claimed that she was entitled to the retirement package, including the pension. The trial court heard the wife's petition, and entered an amended final judgment of divorce which specifically found that the judge proceeding over the original divorce "expressed that the Roadway Pension Plan was to be included in the entire retirement fund which to [sic] Ms. Woody was to receive half." *Id.* at *3. The husband appealed, and we held that

"the [trial] court intended that the whole pension fund, whatever it might consist of, be divided equally between the parties. The fact that the original divorce decree only addressed division of the retirement stock savings was clearly *an unintentional omission* [by the judge] which was appropriately corrected by the amended final judgment . . . ." *Id.* at \*6 (emphasis added).

The case at bar is distinguishable from **Woody**, where the record in that case clearly indicated that the trial judge awarded the wife the entire pension fund, but made a clerical mistake in the judgment and later corrected per Tenn R. Civ. P. 60.01. But, as Husband points out in his brief, had this been a mistake on Wife's part, she could have filed a motion pursuant to Tenn R. Civ. P. 60.02, but did not do so. More importantly, in **Woody**, the mistake was made by the judge; here, the parties and not the judge, formed the MDA. Absent fraud or mistake, which Wife has not alleged, "a contract must be interpreted and enforced as written, even though it contains terms which may be thought harsh and unjust." **Honeycutt v. Honeycutt**, 152 S.W.3d 556, 562 (Tenn. Ct. App. 2003) (quoting *Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990)). The language in the MDA is plain and unambiguous that Wife is to receive one-half the pension.

In this case, the court specifically ordered that Wife was entitled to half of Husband's pension, her one-half interest being $25,048.87. The court specifically ordered that Wife was not entitled to half of Husband's annuity[7] per the MDA. Wife argues that the order is against the evidence and the judgment issued from the bench. We reject this argument. The court stated that whatever the MDA actually said concerning the pension, that is what Wife should receive. As we have already discussed, Wife received exactly what she bargained for — the pension. Thus, we affirm the trial court's decision.

## C.
### MDA Obligations: Accord and Satisfaction

Wife argues that Husband did not meet his evidentiary burden to establish the defense of accord and satisfaction. Wife also contends that the lower court reserved judgment on the issue of the $15,000 MDA obligation, and thus the court erred by issuing a final order contradicting the ruling from the bench.[8] We begin by addressing the latter issue, and find that this argument has no

---

[7] The record is silent as to dollar amount of the annuity.

[8] Wife bases this argument on the following statement made by the judge at the hearing:

> The other issues regarding the matters that would be performed in the original decree of divorce, I hesitate to say this, but if there is some specific evidence that some major thing has not been done, and I'll be glad to look at it, otherwise, as far as the Court is concerned, all these prior orders are prior orders. And something that's eight years in the past, the Court will assume that has been fulfilled. If that's not correct then I'll be

(continued...)

merit: "[a] court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." ***Sparkle Laundry & Cleaners v. Kelton***, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979) (citing *Mass. Mut. Life Ins. Co. v. Taylor Implement & Vehicle Co.*, 138 Tenn. 28, 195 S.W. 762, 765 (Tenn. 1917)).  Any statements made by the judge from the bench "are subject to change any time before the entry of a final order." ***Kotil v. Hydra-Sports, Inc.***, No. 01-A-01-9305-CV00200, 1994 WL 535542 (Tenn. Ct. App. Oct. 5, 1994), at *4 (citing *Broadway Motor Co. v. Public Fire Ins. Co.*, 12 Tenn. App. 278, 1930 WL 1696, at *3 (Tenn. Ct. App. Sept. 20, 1930)).

We next address whether Husband met his evidentiary burden of an accord and satisfaction. As discussed previously, a MDA is a contract between the wife and husband in contemplation of divorce.  ***Belcher v. Belcher***, No. E2004-02712-COA-R3-CV, 2005 WL 2333607, at *2 (Tenn. Ct. App. Sept. 14, 2005) (quoting *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998)); *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001)).  Once the MDA existence is proven, "the defendant in breach who asserts the defense of accord and satisfaction bears the burden of proof by a preponderance of the evidence that the contracting plaintiff agreed to accept lesser payment rendered in satisfaction of the original performance or payment for which the parties contracted." ***Belcher,*** 2005 WL 2333607, at *2 (quoting *Ward v. Wilkinson*, No. 01A01-9803-CH-00151, 1999 WL 221843, at *1 (Tenn. Ct. App. Apr. 19, 1999)).  The Tennessee Supreme Court has laid out the required elements of an accord and satisfaction as follows:

> An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement.

***Lytle v. Clopton***, 149 Tenn. 655, 261 S.W. 664, 666 (Tenn. 1924).  Furthermore, "[b]oth the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction." ***Id.*** at 667.

These rules apply equally where a party is seeking to avoid a judgment by raising the defense of accord and satisfaction.  ***Belcher,*** 2005 WL 2333607, at *2 (citing *Heinze v. Severt*, No. E2002-01184-COA-R3-CV, 2003 WL 1868651, at *3 (Tenn. Ct. App. Apr. 10, 2003)). Whether the parties entered into an accord and satisfaction is a question of fact for the trier of fact to determine. ***Stinnett v. Stinnett,*** No. E2000-001210-COA-R3-CV, 2000 WL 1273880, at *5 (Tenn. Ct. App. Sept. 7, 2000) (citing *Lindsey v. Lindsey*, 930 S.W.2d 553, 557 (Tenn. Ct. App. 1996)).  The court must look at the surrounding circumstances to determine if the parties intended an accord and satisfaction. ***Lytle***, 261 S.W. 664 at 667.

---

[8](...continued)
glad to take it up.

In the present case, Husband had the burden of proving by a preponderance of the evidence that he and Wife intended to enter an accord and satisfaction concerning the $15,000. After reviewing the record, we do not find that the evidence preponderates against the trial court's conclusion that Husband met his burden of establishing an accord and satisfaction. Wife questioned Husband at the hearing concerning his payments and asked for receipts proving that Husband paid Wife, but Husband claimed he did not have them; rather, he had a quitclaim deed signed by Wife where she conveyed her interest in the marital home. Husband's attorney then raised the affirmative defense of accord and satisfaction:

> Obviously, the parties reached an accord. You have the real property and pay me fifteen thousand dollars. It [the MDA] says specifically upon the satisfaction of the fifteen thousand dollars she shall execute a quitclaim deed. That's exactly what happened. Mr. Hargrove [Husband] satisfied car payments, rent payments, paid her [Wife] a check. She would have the receipts showing the car payments and the rental payments he made. And it all added up. And there was an odd numbered check given that finished off the fifteen thousand some seven years ago.[9] We prepared – Mr. Darby's office,[10] the folks went in and signed it. Payment was made, and it's been satisfied, Your Honor please.

In Husband's response to Wife's petition for contempt and counter motion prior to the hearing, Husband admits that the $15,000 was not paid in a lump sum; rather, payments were made on a weekly and/or monthly basis. Husband claimed that wife requested the monies paid in this fashion so she would be able to make car and other payments. Wife admitted in her petition for contempt that she had accepted $11,000 from Husband. In support of the defense of accord and satisfaction, Husband relied on the quitclaim deed and the MDA provision calling for a simultaneous exchange of the deed for the $15,000.

We find that the evidence does not preponderate against the trial court's conclusion that Husband met his burden of proof establishing an accord and satisfaction. The court noted several times that Wife did not take action to enforce the MDA until eight years after the divorce, and could have found the delay to indicate an accord and satisfaction between the parties. In **Belcher v. Belcher**, No. E2004-02712-COA-R3-CV, 2005 WL 2333607, at *3 (Tenn. Ct. App. 2005), we upheld a trial court's determination of an accord and satisfaction based partly on grounds of delay. Wife admits in her motion for contempt that she accepted $11,000 from Husband concerning the marital property. The original agreement called for $15,000 to be paid in exchange for the quitclaim

---

[9] From the record, it does not appear that this check was available at the hearing or entered into evidence.

[10] It is unclear from the record who Husband's attorney is referring to here.

deed.  Wife gave Husband the deed, although we do not know the date of transfer because the deed is not before us.  We affirm.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the findings of the chancery court.  Costs of this appeal are taxed to Appellant, Merriellen Elmore Hargrove, a/k/a Merriellen Elmore Warstler, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.