# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 17, 2012 Session

## RONNIE SUMMEY v. MONROE COUNTY DEPARTMENT OF EDUCATION, ET AL.

**Appeal from the Chancery Court for Monroe County**
**No. 16082     Jerri S. Bryant, Chancellor**

_____

**No. E2011-01400-COA-R3-CV-FILED-MAY 29, 2012**

_____

This appeal arises from an employment dispute between Ronnie Summey ("Summey") and the Monroe County Board of Education ("the Board"). Summey worked as head football coach and as a teacher at Sequoyah High School ("Sequoyah") in Monroe County. Summey sued the Board[1] in the Chancery Court for Monroe County ("the Trial Court"), alleging, among other things, breach of contract and violation of various constitutional rights stemming from when Summey was relieved as head coach and offered a new assignment in the school system. The Trial Court ruled in favor of the Board, finding that it was Summey who had breached the contract when he refused to accept the new assignment. Summey appeals. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the appellant, Ronnie Summey.

Arthur F. Knight, III, Knoxville, Tennessee, for the appellee, Monroe County Board of Education.

---

[1]A host of individuals were named in the original suit, but only the Board is involved in this appeal. While the Appellee is named in the complaint as the Monroe County Department of Education, the Appellee identifies itself in its brief as the Monroe County Board of Education. We will identify the Appellee by the name it gives itself, the Monroe County Board of Education.

# OPINION

## Background

In October 2008, Summey sued the Board and numerous individuals for $2,000,000. Summey, previously employed as head football coach and as a teacher at Sequoyah, alleged that the Board had breached its contract with him when it allegedly terminated his employment. The defendants filed an answer denying Summey's allegations. The individual defendants filed a motion to dismiss. The Board and the individual defendants also moved to dismiss Summey's claims of constitutional violations. Additionally, the Board filed a motion for summary judgment. The Trial Court dismissed all the claims against the individual defendants and also dismissed Summey's constitutional claims. The case then proceeded to trial on the breach of contract claim related to the alleged termination of Summey's employment.

Trial was held in June 2011. Summey testified first. Summey had taught at Maryville High School for 24 years. In 2006, Summey applied for the position of head football coach at Sequoyah and was hired. Summey, through his application, specifically stated that he was looking to be hired for a position at Sequoyah. A part-time non-coaching position was created for Summey so that Summey could become head football coach. Despite the apparent dual nature of his role, Summey testified that he was going to work at Sequoyah primarily in order to coach. In March 2007, Summey signed a contract with the Monroe County School System. James M. Millsaps, Director of Schools, executed the contract for the Monroe County School System. The contract specified that Summey was to serve as a teacher "employed for up to 120 days during a 12 month period – beginning 3/12/07" at Sequoyah. Summey already had signed an addendum in February 2007 providing that he would serve as head football coach as well as a teacher at Sequoyah.

Summey resigned from teaching at Maryville High School in 2007 and began drawing retirement from the state for his years of school service. Subsequently, Summey began work as head football coach at Sequoyah. Summey was placed in an office near the Principal of Sequoyah but was assigned no classroom duties. Summey testified that he never received a written job description regarding his non-coaching role.

Controversy arose when Summey began inspecting classrooms. Summey stated that he saw children who wore pajamas to school or children who slept in class. On occasion, Summey removed sleeping children from classrooms. In April 2007, in the wake of negative reaction from the central office, Summey was reassigned to handle study hall. Meanwhile, Summey continued in his role as head football coach. Sequoyah won two games as part of a losing football season under Summey's coaching tenure.

In March 2008, Summey's first one-year contract expired. Summey signed a new one-year contract for 120 days of service that specified he was to be a teacher, although a "coaching supplement" was included with the salary information. The contract stated, in part:

> The employee agrees to work in any building or department or perform such duties, which may be assigned or required by the Director of Schools. The Director of Schools may temporarily suspend this contract when deemed necessary, pending investigation or final disposition before an appropriate hearing authority.

> It is further agreed between the parties that this contract shall be effective and binding for the entire time above mentioned. In case of resignation, the employee agrees to give the Director of Schools thirty (30) days notice to continue in service until such time has transpired; provided that earlier termination may be made by mutual written consent of both parties.

> Nothing in this contract shall be construed to provide future or continued employment unless specifically agreed to by the parties in a separate agreement.

In May 2008, Summey left the state to attend a funeral. When Summey returned, he was summoned to see Principal Moser ("Moser"). Moser told Summey that he either could resign as head football coach or be relieved from that post.

Summey then requested a meeting with the new Director of Schools, Michael Lowry ("Lowry"). Summey testified that Lowry told him that Moser had no right no fire him, and that he would offer Summey a position elsewhere in the system. Summey told Lowry "I considered myself fired." Summey stated that Lowry told him he was, in fact, not fired. Lowry later offered Summey a job as P.E. teacher at Vonore Middle School for the same rate of pay minus the coach's supplement. This arrangement would permit Summey to complete his contract plus have an additional twenty-five working days for which he would be paid. Summey did not accept the new role.

Lowry, Director of Schools, testified. Lowry testified that Summey never met with Lowry for scheduled additional discussions on the matter after the meeting in which Lowry told him he was not fired. Lowry testified:

Q:     Mr. Lowry, I'm not sure if you answered this or were allowed to answer this. Did Mr. Summey give you any indication in that May 27, 2008 meeting that he would accept the position other than Sequoyah High as the football coach?

A:     No, sir. He explicitly said that he was not interested in any other position, even though I did tell him that I would give him a chance to work and complete his contract at another school.

Q:     Okay. And he left your office.

A:     Yes, sir.

Q:     Did you have an impression as to what Mr. Summey intended to do with regard to any such transfer after he left your office?

A:     My feeling when he left was that he was going to quit because he didn't indicate that he was interested in working, continue working in any capacity with the school system.

Lowry stated that he did not fire Summey, but that Summey simply failed thereafter to show up for work and thus he was not paid for the balance of his contract.

Sandra Raper ("Ms. Raper"), personnel clerk and secretary in the Director of School's office, testified. Ms. Raper sat in on and took notes in the meeting between Summey and Lowry. Ms. Raper testified that Lowry told Summey he would find him another position in the school system but Summey subsequently refused that offer. On cross-examination, Ms. Raper affirmed that "the decision to fire [Summey] as coach had already been made" before Summey met Lowry, and that Lowry did not offer a specific new position to Summey at their meeting.

Sonya Lynn ("Lynn"), a school board member, testified. Lynn was on the school board when Summey was hired. Lynn stated that no new position had been created for Summey. Lynn testified that her investigation into the matter consisted, in part, of examining yearbooks. Lynn, however, acknowledged that she had her own lawsuit pending against the Board at the time of trial.

Debra Tipton ("Tipton"), Principal of Vonore Middle School, testified as well. Tipton stated that she had requested a P.E. teacher in the past. Tipton testified that Lowry contacted her about having Summey fill that role. Tipton was in favor of this move. Tipton

stated that Summey never contacted her, and that she was still looking for a P.E. teacher at the time of trial. On cross-examination, Tipton acknowledged that the school board had not specifically created a new position for her to fill. Tipton also acknowledged that the P.E. teacher position that Summey was offered still had not been filled.

Gina Gray ("Gray"), "administrative assistant, personnel coordinator" with the Monroe County School System, testified. Gray testified that, at Lowry's request, two additional meetings were arranged with Summey. Summey failed to attend these meetings. On cross-examination, Gray acknowledged that she was not aware of any vacancy advertised for a job at Vonore Middle School.

After the trial, the Trial Court entered its order, which incorporated its Memorandum Opinion. The Memorandum Opinion stated:

All right, folks. I've heard the facts in this case, viewed all of the witnesses, weighed their individual credibility as well as the weight of the testimony.

This case is governed by the statutes of the State of Tennessee, the School Board's policies and procedures, and the contract that was entered into and signed by the parties in this case.

The contract provides that the employee agrees to work in any building or department or perform such duty as may be assigned or required by the director of schools. Both contracts have that clause in it. The second contract was without an addendum concerning the coaching position, described the plaintiff in this case as a teacher.

The plaintiff was relieved of his coaching duties by the principal, as was the principal's power. The plaintiff was no longer assigned as a coach as of May of 2008. He was told that he would be kept on for the balance of his contract as a teacher and he refused. He was told that the principal did not have the power and he admitted that the principal did not have the power to fire him, and the principal, I find, did not fire him, he merely took away his coaching duties. The director of schools then had the authority to assign the teacher to a different position which he did, and this was refused. It was refused by the plaintiff. He stated that he did not want to have any other job other than to be the high school coach for which he had been originally hired. At this point the Court finds that that created a breach of contract on behalf of the plaintiff.

In order to make the situation clear the director of schools attempted to notify the plaintiff of his assignment or transfer to another position and the plaintiff never reported for work, and, in fact, he stated that he was leaving and would not look back.

The Court finds that for these reasons the plaintiff has failed to carry his burden of proof on any of his claims in this matter and, based on these facts, the Court finds this case should be dismissed.

Summey appeals.

**Discussion**

We restate the issues raised on appeal as follows: 1) whether the Trial Court erred in finding that the Board did not breach its contract with Summey; and 2) whether the Trial Court erred in not finding Summey's transfer to be unlawful.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in finding that the Board did not breach its contract with Summey. As our Supreme Court has instructed with regard to contract interpretation:

"The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *see also Christenberry*, 160 S.W.3d at 494. If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its "plain, ordinary, and popular sense." *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580; *Planters Gin Co.*, 78 S.W.3d at 890. The interpretation should be one that gives reasonable meaning to all of the provisions of the

agreement, without rendering portions of it neutralized or without effect. *See Davidson v. Davidson*, 916 S.W.2d 918 922-23 (Tenn. Ct. App. 1995). The entire written agreement must be considered. *D. & E. Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 518-19 (Tenn. 2001).

> In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.

*Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985) (internal citations omitted).

> However, on occasion, a contractual provision may be susceptible to more than one reasonable interpretation, rendering the terms of the contract ambiguous. *Planters Gin. Co.*, 78 S.W.3d at 890. "Ambiguity, however, does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001) (internal quotation marks and citations omitted). The court will not use a strained construction of the language to find an ambiguity where none exists. *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

*Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703-04 (Tenn. 2008).

Initially, we briefly recount Summey's relevant employment history. Summey signed a one-year contract which began in March 2007. An addendum to this contract specified that Summey would serve as head football coach at Sequoyah. In March 2008, Summey signed a similar contract for another one-year term in the Monroe County School System. For the second contract, however, there was no addendum.

Summey's arguments with regard to the contract seem based on two main points. First, Summey is adamant that he only signed up to be head football coach and a teacher at Sequoyah. Second, Summey alleges that Sequoyah's behavior in keeping him in the coach's position for a period after the expiration of the first contract with the addendum suggests that the addendum remained in force, or, alternatively, that some sort of implied contractual relationship existed.

We disagree with Summey's arguments on this issue. The clear language of both the 2007 and 2008 contracts stated that Summey could be assigned to other duties. Furthermore, we note that the 2008 contract lacked any coach-specific addendum as had the first contract. Summey's employment relationship with the school system was based on these one-year contracts.

The Trial Court made credibility determinations, and we defer to the Trial Court's credibility determinations given the record before us. The evidence in the record does not preponderate against any of the Trial Court's findings. While we acknowledge Summey's assertion that his primary expectation was to be head football coach at Sequoyah, we cannot conclude from the evidence that somehow Summey was indefinitely entitled to remain the head football coach at Sequoyah on the basis of alleged ambiguity regarding the 2007 addendum. On the contrary, we find, as did the Trial Court, that Summey breached his contract when he refused to accept a new assignment. The evidence does not preponderate against the Trial Court's findings that although Summey was relieved of his coaching duties by Moser, Summey never was fired but instead refused any assignment to any position other than that of head football coach.

We next address whether the Trial Court erred in declining to hold that Summey's transfer was unlawful. Summey points to Tenn. Code Ann. § 49-2-301 (b)(1) (GG), which governs dismissal of non-tenured school employees. The statute requires, among other things, notice of the charge, a hearing opportunity, while also providing for an appeals process. Tenn. Code Ann. § 49-2-301 (b)(1) (GG) (Supp. 2011).

We, however, regard what happened to Summey as an attempted transfer, governed by Tenn. Code Ann. § 49-2-301 (b)(1) (EE), which provides for the director of schools the duty to: "Within the approved budget and consistent with existing state laws and board policies, employ, transfer, suspend, non-renew and dismiss all personnel, licensed or otherwise, except as provided in § 49-2-203(a)(1) and in chapter 5, part 5 of this title;" Tenn. Code Ann. § 49-2-301 (b)(1) (EE) (Supp. 2011).

We previously have addressed the transfer of coaches to teaching duty:

> The decision to assign a teacher with coaching responsibilities to a full-time teaching position generally is considered a transfer rather than a dismissal or suspension. *White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981). The statutes afford broad discretion to the director of schools to transfer teachers within the local school system. *See Lawrence County*, 244 S.W.3d at 314; *Metro. Nashville*, 2009 WL 837884, at *4 (quoting *Mitchell v. Garrett*, 510 S.W.2d 894, 898 (Tenn. 1974)). A director of school's decision to transfer

a teacher must be " 'made in good faith, in accordance with the criterion set forth in the statute—efficient operation of the school system.' " *Id.* (quoting *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d 527, 534 (Tenn. 1978)). A director's decision to transfer a teacher is afforded a presumption of good faith, and the party challenging the decision carries the burden to establish, by a preponderance of the evidence, that the decision was arbitrary, capricious or "improperly motivated." *Lawrence County*, 244 S.W.3d at 315. "The determinative question is whether the transfer could be classified as for the 'efficient operation of the school system.' " *Id.*

*Franklin County Bd. v. Crabtree*[2], 337 S.W.3d 808, 814 (Tenn. Ct. App. 2010).

The evidence in the record does not preponderate against any of the Trial Court's findings. After a careful review of the record, we conclude, as did the Trial Court, that the Board's attempt to transfer Summey was lawful. Lowry acted within his power as Director of Schools, and, in accordance with the contract, to attempt to transfer Summey into another assignment. Summey refused to accept the reassignment as it was his position that he would be employed as the head football coach at Sequoyah or not employed by the Board at all.

Summey also points to Tenn. Code Ann. § 49-5-510, which permits the Director of Schools to transfer a teacher within the school system so long as "transfers shall be acted upon in accordance with board policy." Tenn. Code Ann. § 49-5-510 (Supp. 2011). Summey objects to three aspects of the attempted transfer that allegedly affronted law or policy: 1) missing the May 15 deadline for reassignment as required by the Monroe County Schools policy; 2) Lowry's failure to put his reasons for the transfer in writing also as required by policy; and, 3) violating the provisions of the employment contract with Summey.

Respectfully, we find Summey's objections to be without merit. As we already have discussed, the Board did not violate the contract with Summey. The reverse occurred. As to the May 15 deadline for reassignment, we hold that it is not applicable to these circumstances, nor was Summey prejudiced by a lack of written notice. Indeed, Summey made it crystal clear that he was not going to accept any position other than head football coach at Sequoyah.

---

[2]*Crabtree* has certain distinguishing facts from the instant appeal, including the fact that it involves an education association as a party in the context of a collective bargaining agreement. Nevertheless, we regard the analysis as sound and pertinent.

We find no reversible error by the Trial Court. We affirm the judgment of the Trial Court in its entirety.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Ronnie Summey, and his surety, if any.

_____

D. MICHAEL SWINEY, JUDGE