FARMERS–PEOPLES BANK, Petitioner,

v.

H. P. CLEMMER and Pauline M. Clemmer, Respondents.

Supreme Court of Tennessee.

Feb. 18, 1975.

John F. Kizer, Milan, for petitioner.

Lloyd S. Adams, Jr., Adams & Albright, Humboldt, for respondents.

## OPINION

FONES, Chief Justice.

Respondents filed a complaint in the Law and Equity Court of Gibson County, Equity Division, seeking a writ of injunction to require Farmers-Peoples Bank, hereinafter "Bank", to deliver to complainants certain collateral alleged to have been given to secure two promissory notes, which notes were said to have been paid in full on April 28, 1970, and return of said collateral refused.

Bank filed an answer and counterclaim, admitting that the two notes, totaling $16,000, had been paid, but denying the right of plaintiff to any relief because the collateral sought was subject to secure any other obligation of the Clemmers to the Bank, and alleging that plaintiff H. P. Clemmer was indebted to the Bank in the sum of $87,529.43. The Bank's counterclaim asserted said debt to arise by virtue of a contract of guaranty executed by H. P. Clemmer, and the existence of unpaid debts, in the above-named sum, due the Bank by parties whose obligations were guaranteed by Clemmer.

The guaranty, filed as an exhibit to the counterclaim and introduced at the trial, is in this language:

"I, H. P. Clemmer, M. D. of Milan, Tennessee do hereby agree and guarantee against loss, the Farmers-Peoples

Bank of Milan, Tenn., for any debts, overdrafts or any other forms of loss arising out of the accounts or notes of Clemmer Builders Supply, Ridgewood Retirement Inn, Inc. or the notes or accounts of Hubert P. Clemmer, Jr. that are now existing in said Bank up to and through the dates of June 20, 1968. I further guarantee the Farmers-Peoples Bank against Loss of any kind resulting from the operations above described.

Signed this June 20, 1968.

H. P. Clemmer, M. D.

C. B. Harrison
    Witness

John McNail
    Witness"

Clemmer replied to the counterclaim and, although he admitted signing the guaranty, he asserted that he was not furnished a copy of same and did not recall that it included the second sentence. He denied that the instrument was a continuing guaranty and alleged that it was intended, and should be construed, to apply only to debts owed the bank as of June 20, 1968, by Clemmer Builders Supply, Ridgewood Retirement Inn, Inc., and Hubert P. Clemmer, Jr. He further alleged that all debts, overdrafts, accounts and notes of Clemmer Builders Supply, Ridgewood Retirement Inn and Hubert P. Clemmer, Jr., existing up to and including the date of June 20, 1968, have been paid.

The only issue submitted for the determination of the trial court was whether or not the instrument signed by Clemmer should be construed as a continuing guaranty. It was announced that, because of the bankruptcy of Clemmer Builders Supply and litigation growing out of said bankruptcy, it was not possible at the time of the trial to determine the amount of indebtedness of that corporation to the bank, and that issue was reserved.

The trial court entered an interlocutory decree holding that the instrument execut-ed by Dr. Clemmer was a continuing guaranty, and that he was liable to the Bank for the full amount of the debts due it by Clemmer Builders Supply and Hubert Clemmer, Jr., it having been shown that the indebtedness of Ridgewood Retirement Inn had been liquidated.

The Court of Appeals found that the guaranty was ambiguous because, "it attempts to guarantee against certain named losses of two firms and one individual 'that are now existing in said Bank up to and through the dates of June 20, 1968;' and, at another point guarantees the bank 'against Loss of any kind resulting from the operations above described.' From the verbiage used it cannot be determined just what loss was guaranteed against, nor for what period of time. The instrument is subject to more than one possible meaning or interpretation, both as to the losses covered and the time during which it shall be effective."

The case was remanded to the trial court, where extrinsic evidence on the issue of the intent of the parties in giving and receiving the guaranty was directed to be admitted.

We granted certiorari and have heard oral argument.

Dr. Clemmer testified that he was a practicing physician in Milan; that he and his two sons were the "shareholders" in the Ridgewood Retirement Inn; that his son Nick ran the Inn, but he participated in its operation, and that his son Hubert was the manager of Clemmers Builders Supply, which the three of them "had incorporated", and that he had not participated in the management of the Supply corporation.

Dr. Clemmer testified as follows, with respect to the circumstances existing at the time he executed the guaranty:

"Q32. Now, on June 20, 1968, did you sign a guaranty or a document of some nature at the Farmers-Peoples Bank?

A. Yes.

Q33. Because you know that this is the only document that you have signed there?

A. Yes.

Q34. Now, Dr. Clemmer, before June 20, 1968, have you been in conference with anyone at Farmers-Peoples Bank—strike that—before June 20, 1968, were these two corporations—Ridgewood and Clemmer Builders Supply indebted to Farmers-Peoples Bank?

A. No.

Q35. What was the nature of the debt —was it notes or was it overdrafts?

A. Overdrafts.

Q36. Overdrafts?

A. Yes.

Q37. As far as you know there were no promissory notes?

A. No.

Q38. Had there been overdrafts from time to time and the overdrafts had been paid?

A. Yes.

Q39. Before June 20, 1968, did you confer with the Farmers-Peoples Bank or any of the Farmers Peoples bank representatives regarding these overdrafts of Clemmer Builders Supply or Ridgewood or Hubert Clemmer, Jr. or his notes?

A. Yes, sir.

Q40. How many times before June 20 did you confer as you recall?

A. Well, I remember one time in Mr. Haskel's office—Hubert and Nick and I met in there with him and Mr. John McNail.

Q41. Now, was anything signed on that occasion?

A. No.

Q42. Was there a discussion about the financial situation?

A. Right.

Q43. Was there an agreement or a decision made at that time as to what should be done or did you or what is your recollection?

A. No, there was no—yes, we agreed that there should be something done and that I should guarantee that this was done.

Q44. All right, did you sign something at that time?

A. No.

Q45. It was on June 20 that you signed a guaranty, is that right?

A. Yes.

Q46. All right, what was your understanding at the time as to what you were guaranteeing?"

▪ Counsel for Bank objected on the grounds that question 46 sought to explain, alter, or modify a written instrument, in violation of the parol evidence rule. After rather extensive arguments by counsel for both parties, the court sustained the objection; whereupon, an offer of proof was tendered, consisting of a narration by counsel for Dr. Clemmer as to the expected substance of said proof. Parenthetically we observe that, while this method of making an offer of proof meets the technical requirements of Rule 43.03, the better practice is to present the proof so that if, on appeal, the ruling of the trial judge is reversed on the legal question presented, the possibility of a second appeal, following the remand, will be avoided.

▪ It has been the settled law in this State for at least 120 years (Bright v. McKnight, 33 Tenn. 158 (1853)), that a

guarantor in a commercial transaction shall be held to the full extent of his engagements and that the rule in construing such an instrument is that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit.

■ A "continuing guaranty" is one which is not limited to a particular transaction or specific transactions, but which is intended to cover future transactions until revoked. Stearns v. Jones, 138 Tenn. 589, 199 S.W. 400 (1917).

■ In our opinion, the first sentence guarantees the losses that may arise from any form of indebtedness existing on June 20, 1968, and the second sentence is a continuing guaranty to cover future transactions between the bank and the parties named in the first sentence, until revoked.

This interpretation is strengthened by the presence of the word "further" in the second sentence.

Black's Law Dictionary, 4th Ed. P. 804, gives the meaning of the word as follows:

> "Further. Not word of strict legal or technical import, and may be used to introduce negation or qualification of some precedent matter, but generally when used as an adverb it is a word of comparison, and means 'additional', and is equivalent to 'more over, or furthermore, something, beyond what has been said or likewise, or also.' (Citing authorities)."

In the instrument under consideration, the word "further" is used as an adverb, since it modifies the verb, guarantee. The undertaking in the second sentence is thus stated to be an additional guarantee not undertaken in the first sentence, to wit, a continuing guaranty beyond June 20, 1968. In our opinion, there is simply no substance to the contention that the limitation of June 20, 1968 must be read into the second sentence of the instrument. That interpretation renders the inclusion of the second sentence a complete nullity.

 A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists.

Further, the instrument under consideration is not an ordinary contract. It is a guaranty in a commercial transaction. As such, we are required to construe the words as strongly against the guarantor as the sense will admit. So construed, the sense of the words used are, in our opinion, clear and unambiguous.

The Court of Appeals is reversed and the decree of the trial court affirmed. The case is remanded to the Law and Equity Court of Gibson County for further proceedings consistent with this opinion. The costs of the appeal are adjudged against Dr. Clemmer.

COOPER, HENRY, BROCK AND HARBISON, JJ., concur.