FILED

10/03/2018

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 17, 2018 Session

## ADVANCED BANKING SERVICES, INC. v. ZONES, INC.

Appeal from the Circuit Court for Rhea County
No. 2016-CV-358     Justin C. Angel, Judge

No. E2017-02095-COA-R3-CV

This action involves the applicability of a forum selection clause contained within a contract for the installation of two network telephone systems. On April 8, 2015, the seller corporation sent to the buyer corporation a twenty-four-page, itemized quote for equipment and licensing required for the network telephone systems, which the buyer corporation's president signed and returned to the seller. The quote, consisting of a purchase order with specified terms and conditions on each page, contained provisions for "Shipping Terms" and "RETURNS." Under the heading for returns, the purchase order stated that additional terms and conditions applied and were available on the seller's website. Following a dispute, the buyer filed a complaint in the Rhea County Circuit Court ("trial court") against the seller, alleging breach of contract, misrepresentation, negligence, and unjust enrichment. The seller subsequently filed a motion to dismiss for improper venue, citing a forum selection clause contained in the "General Terms and Conditions of Sale" from the seller's website, which specified King County, Washington, as the sole venue for litigating the terms of the contract. In an Order entered September 27, 2017, the trial court granted the motion to dismiss, finding that the forum selection clause was valid and enforceable. The buyer has appealed. Determining that the additional terms and conditions from the seller's website were only applicable to returns and not to the contract as a whole, we reverse the trial court's grant of the seller's motion to dismiss.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Andrew F. Tucker, Dayton, Tennessee, for the appellant, Advanced Banking Services, Inc.

Jimmie C. Miller and William C. Bovender, Kingsport, Tennessee, for the appellee, Zones, Inc.

**OPINION**

I.  Factual and Procedural Background

According to the complaint, in early 2015, Advanced Banking Services, Inc. ("ABS") entered into negotiations with Zones, Inc. ("Zones") for the installation of network telephone systems for two of ABS's clients.[1]  ABS informed Zones during these negotiations that the network telephone systems would require separate directories in order to satisfy the needs of ABS's clients.  On April 8, 2015, Zones provided ABS with a twenty-four-page, itemized quote ("Purchase Order") with a total price of $168,811.17 for equipment and licensing necessary for installation of the network telephone systems, which Zones represented would be able to support multiple directories as requested. Each page of the Purchase Order contained a small box at the bottom with the following text:

> Shipping Terms:    For all shipments, Zones will arrange for shipping to the customer's destination; however, such costs are the responsibility of the customer.  For shipments made during the seven calendar days preceding the end of each calendar quarter, title and risk of loss will pass to the customer upon delivery by Zones to the carrier.  For all orders shipped within this seven day period, Zones will obtain third-party insurance at its own expense and will assist the customer in filing any claims with the insurance company arising from loss or damage to the shipment during transit.  Prices are quoted by volume, and are subject to change without notice.  Products sold by Zones are third party products and are subject to the warranties and representations of the applicable manufacturers.
>
> RETURNS:  No returns will be accepted without a Return Authorization (RA) Number, requested within 14 days from the invoice date.  Software

---

[1] This case having been resolved below by the grant of a motion to dismiss for lack of venue, we must consider the allegations of the complaint as true.  *See Cohn Law Firm v. YP Se. Advert. & Publ'g, LLC*, No. W2014-01871-COA-R3-CV, 2015 WL 3883242, at *4 (Tenn. Ct. App. June 24, 2015) ("In considering an appeal from a trial court's grant of a motion to dismiss for lack of personal jurisdiction or venue, we take all allegations of fact in the complaint as true and review the trial court's legal conclusions de novo with no presumption of correctness.").

licensing and special-order products are non-returnable.  Other products are subject to manufacturer return policies and restrictions.  Additional Terms and Conditions apply and are available on our website.

(Emphasis added.)

Dave Seera, the president of ABS, signed the first page of the Purchase Order and returned it to Zones with a handwritten notation of "PO: 04082015 NET30."  ABS also tendered payment of $43,020.35 to Zones as a "down payment."[2]  Shortly after beginning the installation, one of Zones' subcontractors informed ABS that the systems included in the Purchase Order would not be able to safely support multiple directories without the further installation of separate servers for each client in order to avoid a possible data breach.  ABS was also informed that the license it had initially purchased was not compatible with its clients' needs.  ABS subsequently contacted Zones, which confirmed that ABS would need a second server in order to safely operate multiple directories, quoting to ABS an additional $53,121.22 for licensing and installation.

ABS, claiming that Zones had represented during the preliminary negotiations that the network telephone systems included in the Purchase Order could properly support multiple network directories, requested a refund of the $43,020.35 paid to Zones.  ABS also claimed that it had never received the licenses for which it paid the $43,020.35 down payment, having received confirmation from Zones that such licenses were incompatible with the needs of ABS's clients.  ABS acknowledged in the complaint, however, that it did receive a refund of $2,284.81 from Zones.

ABS, alleging that Zones' misrepresentations and improper installation of the network telephone systems amounted to a material breach of contract, considered the $2,284.81 refund as only partial repayment of the $43,020.35 that it had tendered to Zones.  ABS subsequently filed a complaint in the trial court against Zones on November 3, 2016, alleging breach of contract, misrepresentation, negligence, and unjust enrichment.  ABS requested, *inter alia*, a refund of the $43,020.35 payment in full; an award of damages stemming from Zones' breach of contract, misrepresentations, and negligence; and an award of court costs, attorney's fees, and incidental expenses.

On December 28, 2016, Zones filed an answer, denying all substantive allegations and raising various affirmative defenses to ABS's claims.  Pertinent to this appeal, Zones also filed a motion to dismiss, arguing that Rhea County, Tennessee, was an improper

---

[2] The record does not indicate what specific equipment, licensing, or services were included in the $43,020.35 payment to Zones, nor does the record indicate how the parties arrived at this particular amount.  In its complaint, ABS refers to this amount as a down payment and indicates that the amount represents the cost of the necessary licensing.

venue for the litigation because the parties had agreed to a forum selection clause in their contract that specified King County, Washington, as the sole venue for litigation. *See* Tenn. R. Civ. P. 12.02(3). In support of this motion, Zones attached the "Zones General Terms and Conditions of Sale" ("Website Terms") from their website, which provide in pertinent part:

**Governing Law**

THESE TERMS AND CONDITIONS OF SALE AND ANY SALE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF WASHINGTON, WITHOUT REGARD TO CONFLICTS OF LAWS RULES. ANY ARBITRATION, ENFORCEMENT OF ANY ARBITRATION OR LITIGATION WILL BE BROUGHT IN KING COUNTY, WASHINGTON AND CUSTOMER CONSENTS AND SUBMITS TO THE JURISDICTION OF THE FEDERAL AND STATE COURTS LOCATED IN KING COUNTY, WASHINGTON AND THEREFORE WAIVES THE RIGHT TO CHANGE VENUE.

The Website Terms also include various other sections with regard to Zones' products and services, including a section entitled, "Return Policy." Zones supported the validity of the Website Terms by filing an affidavit from Anwar Jiwani, the Chief Information Officer and Senior Vice President of Zones. Mr. Jiwani stated in his affidavit that he oversaw changes to content in Zones' website, utilizing a program called "TortoiseSVN v. 1.6," which tracked the date and substance of any changes. According to Mr. Jiwani's affidavit, the tracking program reported a change on August 7, 2014, and then again on June 5, 2015, with no changes occurring between the two dates. The Website Terms attached to the motion were represented to be the Website Terms on the website at the relevant period of time, which corresponded with the signing of the Purchase Order on April 8, 2015.

On October 2, 2017, following a hearing on the motion, the trial court entered an order granting Zones' motion to dismiss for improper venue. In its order, the trial court stated in pertinent part:

As an initial matter, the Court overruled [ABS's] objection to the admissibility of the [Website Terms] and determined that the [Website Terms] were sufficiently authenticated by the Affidavit of the Chief Information Officer and Senior Vice President, Mr. Anwar Jiwani.

Thereafter, the Court determined that the [Website Terms] applied to the complete sale, including the license that [ABS] alleged it never

4

received, because [ABS] received other items listed on the [Purchase Order], that the [Website Terms] were not limited to Returns only, and that [ABS's] argument that [Zones] had waived the terms and conditions by issuing a "Return Authorization number" and accepting a return of two items out of 15 or 16 pages of products that were sold was moot.

Further, the Court found that the [Website Terms] contained a valid forum selection clause that required all matters be litigated in the courts of King County, Washington, and that [ABS] accepted the [Website Terms] based on the fact that [ABS] received items and services contained in the invoice.

The trial court thereby dismissed ABS's claims. ABS timely appealed.

## II. Issues Presented

ABS presents five issues on appeal, which we have restated slightly as follows:

1. Whether the trial court erred by determining that acceptance of material goods from the Purchase Order constituted acceptance of the Website Terms containing the forum selection clause.

2. Whether the trial court erred by determining that the forum selection clause was generally applicable to the entire contract and not restricted to returns of products.

3. Whether the trial court erred by finding that the Purchase Order constituted a valid contract with sufficient consideration.

4. Whether the trial court erred by determining that the affidavits submitted by Zones in support of its motion to dismiss properly authenticated the Website Terms.

5. Whether the trial court erred by pretermitting ABS's argument that Zones had waived the Website Terms through its August 26, 2015 email accepting the return of two licenses.

## III. Standard of Review

We review the trial court's interpretation of a written agreement, *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of*

*Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). As this Court has previously explained:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006).

## IV. Purchase Order as a Contract

As a preliminary matter, we address whether the signed Purchase Order formed a valid and enforceable contract between ABS and Zones. On appeal, ABS contends that the Purchase Order functioned solely as an invitation for ABS to make an offer to Zones. ABS further contends that Zones did not accept the offer ABS extended through the signed Purchase Order because Zones did not ship or deliver a specific license required to install the network telephone system.

We note at the outset that ABS raises the argument that it did not enter into a binding contract with Zones for the first time on appeal. "One cardinal principle of appellate practice is that a party who fails to raise an issue in the trial court waives its right to raise that issue on appeal." *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009); *see* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was

reasonably available to prevent or nullify the harmful effect of an error."). In the third paragraph of its complaint filed in the trial court, ABS stated that "[a] contract between the parties was formed in Rhea County, Tennessee." Furthermore, the gravamen of ABS's complaint is that Zones breached the parties' contract by failing to provide the systems for which ABS paid. ABS consistently argued in its subsequent filings in the trial court that a contract existed between the parties. We discern nothing in the record to indicate that ABS contended otherwise at any point during the proceedings in the trial court. We therefore conclude that ABS has waived the issue of whether the Purchase Order constituted a contract. *See Waters v. Farr*, 291 S.W.3d at 918.

## V. Additional Terms and Conditions

We must now address the language of the written instrument at issue in order to determine which terms and conditions govern the agreement. *See Kafozi*, 184 S.W.3d at 698. Although the Purchase Order contains some provisions for shipping and returns, the language of the instrument unambiguously indicates that the parties contemplated the inclusion of additional terms and conditions not expressed in the Purchase Order itself. Specifically, the Purchase Order provides that "[a]dditional Terms and Conditions apply and are available on [Zones'] website," and ABS does not dispute that it was aware of this language. *See Stovall v. Dattel*, 619 S.W.2d 125, 127 (Tenn. Ct. App. 1981) ("[W]here several instruments are made part of one transaction, they will be read together and each will be construed with reference to the other." (quoting *Real Estate Mgmt., Inc. v. Giles*, 293 S.W.2d 596, 599 (Tenn. Ct. App. 1956))).

ABS contests the applicability of the Website Terms and the associated forum selection clause as concerning its claims on two separate theories. First, ABS contends that any additional terms would be applicable to returns only and not to the contract in its entirety. Second, ABS contends that the Website Terms have not been properly authenticated as the additional terms and conditions referenced in the Purchase Order and are therefore inapplicable to the contract. In contrast, Zones contends that the contract does not contain any language that limits the application of the Website Terms to returns and that the Website Terms are valid and applicable to the contract in its entirety. Upon a thorough examination of the record and applicable law, we determine that the language of the Purchase Order unambiguously restricts any additional terms and conditions of the contract to returns, making the Website Terms inapplicable to claims not related to returns.

In interpreting a contract, our "initial task is to determine whether the language in the contract is ambiguous." *Ray Bell*, 356 S.W.3d at 386-87 (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002)). "If the contract language is unambiguous, then the parties' intent is determined from the four corners of

7

the contract." *Ray Bell*, 356 S.W.3d at 387 (citing *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)). This Court has explained the principles applied to determine whether the contract language is clear or ambiguous as follows:

> The language in dispute must be examined in the context of the entire agreement. *Cocke County Bd. of Highway Commrs. v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way. *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Id.*

*Vanbebber v. Roach*, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. Mar. 3, 2008).

Turning to the language contained in the Purchase Order, we do not discern any ambiguity with respect to the scope of any additional terms. The phrase, "Additional Terms and Conditions apply and are available on [Zones'] website," appears at the end of a paragraph under the heading entitled, "RETURNS," which is in turn part of the larger section entitled, "Shipping Terms." We are not persuaded by Zones' argument that the sentence contained in this section should be read without consideration of the section title or the paragraph headings that give context to its meaning. *See Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) ("In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. . . . [A] contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." (quoting *Cocke Cty. Bd. of Highway Commr's v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985))). We therefore conclude that the sentence incorporating additional terms, including the forum selection clause at issue herein, applies only to returns, rather than the contract as a whole.[3]

Assuming, *arguendo*, that the placement of a sentence under an explanatory heading creates an ambiguity as to whether the explanatory heading applies to that sentence, our interpretation of the Purchase Order remains the same. It is well settled that "ambiguities in a contract are to be construed against the party drafting it." *Frank Rudy Heirs Assocs. v. Moore & Assocs., Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App. 1995). Zones admitted to initially preparing and delivering the Purchase Order to ABS in its reply to the complaint and throughout the pleadings. Considering Zones as the drafting party, therefore, we would construe the language contained within the Purchase Order

---

[3] We note, however, that this opinion does not preclude the trial court, upon remand, from determining whether a "return" was involved in this matter based on the evidence presented.

against Zones in our interpretation of the ambiguity as to whether the "RETURNS" heading applies to the reference to additional terms and conditions. *See Frank Rudy Heirs*, 919 S.W.2d at 613. Our determination that additional terms and conditions apply solely to returns would therefore remain unchanged.

We are also not persuaded by Zones' argument that the additional terms and conditions mentioned in the Purchase Order cannot apply solely to returns because such an application would strain the construction of some provisions within the Website Terms. Although the Purchase Order states that additional terms and conditions apply and are available on Zones' website, the Purchase Order does not provide a link or reference to any particular terms and conditions. It is unclear, therefore, whether the "Additional Terms and Conditions" are in reference to (1) the terms and conditions specific to the "Return Policy" contained in the Website Terms, (2) the Website Terms in their entirety, or (3) some other terms and conditions located on Zones' website.[4]

Accordingly, we reverse the trial court's grant of Zones' motion to dismiss ABS's complaint. Having determined that the forum selection clause contained within the Website Terms does not require dismissal of the complaint, we further determine that ABS's remaining issues of whether the Website Terms were properly authenticated and whether Zones waived the Website Terms through its subsequent conduct are pretermitted as moot.

## VI. Conclusion

For the aforementioned reasons, we reverse the trial court's judgment dismissing ABS's complaint for improper venue. We remand this matter to the trial court for further proceedings consistent with this opinion. The costs on appeal are taxed to the appellee, Zones, Inc.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[4] The Website Terms attached to Zones' motion to dismiss are titled, "Terms & Conditions – Policies." Located in the corner of the printout containing Website Terms from Zones' website, there are links to three other pages from Zones' website that are not included in the record, titled "Legal Disclaimer," "Privacy Policy," and "Terms of Purchase."