IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 28, 2021 Session

**KIMBERLY ANNE MCGRATH v. MELISSA POWERS HESTER**

**Appeal from the Chancery Court for Wilson County**
**No. 2018CV261     C. K. Smith, Chancellor**

———————————————————

**No. M2019-02147-COA-R3-CV**

———————————————————

This appeal arises from an action regarding life insurance proceeds.  As part of a permanent parenting plan, both parents were to insure their respective lives for $300,000 until the child support obligation was completed, with the children named as the sole beneficiaries to the policies and the other parent named as trustee for the benefit of the children.  The Trial Court granted summary judgment finding that the children had a vested interest in the life insurance policy but that they were only entitled to the portion of the proceeds equivalent to the remaining child support obligation.  With the defendant's concession on appeal that the children had a vested interest in the life insurance proceeds, that a constructive trust was appropriate, and that the most recent permanent parenting plan was controlling, the only issues before this Court involved the amount of life insurance proceeds to which the children were entitled and attorney's fees.  We modify the amount of the Trial Court's judgment and hold that the children are entitled to the entire $300,000 life insurance proceeds per the agreed permanent parenting plan.  We affirm the Trial Court's denial of attorney's fees.  Additionally, we deny the mother's request for an award of attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Modified in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Donald Capparella, Kimberly Macdonald, Jacob R. Nemer, and Kristen B. Amonette, Nashville, Tennessee, for the appellant, Kimberly Anne McGrath.

Amy J. Farrar, Sonya S. Wright, and Amanda Moore, Murfreesboro, Tennessee, for the appellee, Melissa Powers Hester.

# OPINION

## Background

Kimberly Anne McGrath ("Mother") and Brian Wayne Hester ("Father") were married in 2002. The parents had two children during the marriage and divorced in 2009. Father obtained a term life insurance policy for $500,000 in 2005. From 2005 through 2014, Mother was designated as the direct beneficiary of this policy under her former married name.

At the time of the parents' divorce, the Davidson County Circuit Court ("Circuit Court") entered a divorce decree approving the parents' agreed permanent parenting plan. The 2009 permanent parenting plan designated Mother as the primary residential parent and ordered Father to pay $1,600 per month for child support for their two children. The 2009 permanent parenting plan included the following provision relating to the life insurance requirement:

> The ☐mother ☐father ☒both shall insure his/her own life in the minimum amount of $300.000.00 by whole life or term insurance. Until the child support obligation has been completed, each policy shall name the following as sole irrevocable primary beneficiary: ☐the other parent ☒ the other parent, as trustee for the benefit of the children, to serve without bond or accounting, ☐ other :Please Type Other Information.

The Circuit Court entered an agreed order in 2010, allowing Mother to relocate with the children and modifying Father's child support obligation to $910 per month. The life insurance provision remained the same. In 2011, Father married Melissa Powers Hester ("Ms. Hester" or "Defendant"). The parents agreed to modify their permanent parenting plan again in 2013, and Father's child support obligation was decreased to $679 per month. In the 2013 revised plan, the life insurance provision read as follows:

> If agreed upon by the parties, the ☐mother ☐father ☒both shall insure his/her own life in the minimum amount of $300,000.00 by whole life or term insurance. Until the child support obligation has been completed, each policy shall name the child/children as sole irrevocable primary beneficiary, with the other parent as trustee for the benefit of the child(ren), to serve without bond or accounting.

In 2014, Father designated his wife, Ms. Hester, as the direct beneficiary of his life insurance policy. The permanent parenting plan was again modified by the Circuit Court in 2017 by agreement of Mother and Father. This plan decreased Father's child support obligation to $547 per month. The life insurance provision in this plan read as follows:

> Both shall insure his/her own life in the minimum amount of $300.000.00 by whole life or term insurance. Until the child support obligation has been completed, each policy shall name the child/children as sole irrevocable primary beneficiary, with the ☒ other parent other _____, as trustee for the benefit of the child(ren), to serve without bond or accounting.

Father subsequently died in September 2018 when the children were ages 11 and 13. At the time of his death, Father maintained the life insurance policy for $500,000 with Ms. Hester listed as the beneficiary on the policy.

Mother subsequently filed a complaint in the Wilson County Chancery Court ("Trial Court"), requesting a constructive trust and an emergency temporary restraining order.[1] According to Mother's complaint, the proceeds of Father's life insurance policy should be placed into a constructive trust and the life insurance company should be restrained from paying any proceeds of the life insurance policy to Ms. Hester or any other third party except the court clerk. The Trial Court entered an emergency temporary restraining order restraining and enjoining Northwestern Mutual Life Insurance Company "from paying any proceeds of any life insurance policy insuring the life of [Father], deceased, to [Ms. Hester], or to any third party other than the Clerk of [the Trial] Court." An agreed order was later entered by the Trial Court instructing Northwestern Mutual Life Insurance Company to deposit the $300,000 disputed amount of the life insurance proceeds with the Trial Court clerk, with the remaining amount payable to Ms. Hester. Northwestern Mutual Life Insurance Company subsequently deposited such amount with the Trial Court clerk.

Mother filed a motion for summary judgment, as well as a memorandum of law in support of her motion, a statement of undisputed material facts, her affidavit, insurance policy documentation, and copies of the four permanent parenting plans with the respective court orders approving the plans. According to Mother, no genuine issue of material fact existed "as to the issue of the imposition of a constructive trust on the life insurance proceeds of [Father]." According to Mother, Father was required to maintain a life insurance policy for the children, and he failed to do so. Mother argued that she, as trustee for the children, had a vested interest in the life insurance proceeds due to the 2017

---

[1] The action initially included Northwestern Mutual Life Insurance Company as a defendant to this action. Upon the parties' agreement, Northwestern Mutual Life Insurance Company deposited the life insurance proceeds at issue with the clerk of the Wilson County Chancery Court, and Mother voluntarily nonsuited all claims against the insurance company.

permanent parenting plan that required Father to maintain the children as beneficiaries of his $300,000 life insurance policy. Mother argued that the Trial Court should enter a judgment as a matter of law imposing a constructive trust for $300,000 of the life insurance proceeds and awarding that amount to Mother as trustee for the minor children. As part of her motion, Mother also requested an award of attorney's fees and expenses.

Ms. Hester subsequently filed a response to Mother's summary judgment motion, a response to Mother's statement of material facts with additional undisputed facts, an affidavit by her, case law, Mother's response to a request for admissions, and affidavits from Derrick H. Green and Quincy L. Salam, counsel for Father during the proceedings to revise the parenting plan in 2017. In her response, Ms. Hester argued that an issue of material fact existed concerning whether Mother and Father were required to maintain a life insurance policy for the children after the 2013 permanent parenting plan. According to Ms. Hester, the 2013 permanent parenting plan made the life insurance requirement optional and Mother and Father had not intended to change the life insurance provision in the 2017 plan. Ms. Hester further argued that even if Mother and Father were required to maintain $300,000 life insurance policies as part of the 2017 plan, Mother never complied with the requirement and had unclean hands. Ms. Hester further argued that Mother did not meet the elements of a constructive trust, and even if a constructive trust was proper, the amount should be limited to the portion of the life insurance proceeds necessary to satisfy Father's child support obligation. As such, Ms. Hester requested that the Trial Court deny Mother's motion for summary judgment.

Mother subsequently filed a reply to Ms. Hester's response, stating that the 2017 permanent parenting plan was agreed to by Mother and Father and approved by the court upon its determination that the plan was in the children's best interest. According to Mother, the 2017 parenting plan was binding on Father. Mother argued that a constructive trust was appropriate. In addressing Ms. Hester's argument concerning Mother's "unclean hands," Mother stated that this action was filed on behalf of the children, who had a vested right to the life insurance proceeds and with which there were no allegations of wrongdoing.

Following a hearing during which the Trial Court heard arguments on behalf of the respective parties, the Trial Court found that no genuine issue of material fact existed and granted summary judgment in favor of Mother for the amount of Father's remaining child support obligation that would be due for the children. In its judgment, the Trial Court stated as follows in pertinent part:

> 5. The children's interest in the life insurance policy became vested when the Court entered its Order in 2009.

> 6. The life insurance policy was to insure the child support payments.

- 4 -

7. The Plaintiff and Father, Brian Hester, attempted to modify the Permanent Parenting Plan in 2010, 2013, and 2017.

8. The attempted modifications of the vested interest of the children in the life insurance policy were void because they were an attempt to take the children's property without due process of law.

      a. No complaint was filed asking the Court to divest the children's vested interest in the life insurance policy.

      b. No guardian ad litem or attorney ad litem was appointed to protect the interest of the children.

      c. The children were given no opportunity to defend their position in Court.

      d. There was neither a hearing in Court nor a finding by the Court that it was in the children's best interest to be divested of their interest in the life insurance policy.

9. Since the attempted changes in the Permanent Parenting Plan in 2010, 2013, and 2017 are void as to the life insurance policy, the contents of the changes regarding the life insurance policy is irrelevant and non-binding on either party.

10. In regard to the life insurance policy only, the provisions of the 2009 Permanent Parenting Plan and Order apply in this case.

11. The Court further finds that there is no just reason for delay in the entry of Judgment in this matter.

It is therefore ORDERED, ADJUDGED, and DECREED as follows:

1. The Plaintiff is granted a Judgment as a matter of law against Defendant in an amount equal to the balance of the child support due to the children less any credits that the Father, Brian Hester, would be entitled to;

2. There is no constructive trust; Defendant, Melissa Powers Hester, did not acquire the benefits of the life insurance policy by fraud or any other wrongful conduct;

Mother timely appealed to this Court.

## Discussion

Although not stated exactly as such, Mother raises six issues for our review on appeal: (1) whether the Trial Court erred by not awarding the children the entire portion of the $300,000 life insurance proceeds agreed to in the permanent parenting plan, (2) whether the Trial Court erred by declining to allow the children's recovery in the form of a constructive trust with Mother as trustee for the children, (3) whether the legal effect of the life insurance provision in the four permanent parenting plans remained unchanged, (4) whether the Trial Court erred by determining the three modifications to the life insurance provision in subsequent permanent parenting plans to be void, (5) whether the Trial Court erred by failing to award Mother her attorney's fees, and (6) whether Mother is entitled to an award of attorney's fees on appeal.

For purposes of appeal, Ms. Hester states in her appellate brief that she "concedes that the children have a vested interest in [Father's] life insurance policy, that a constructive trust is appropriate, and that the 2017 Order is controlling." Therefore, the remaining issues before this Court for review concern (1) whether the Trial Court erred by declining to award the children the entire $300,000 of the life insurance policy required by the permanent parenting plan, (2) whether the Trial Court erred by declining to award Mother her attorney's fees, and (3) whether Mother should be awarded her attorney's fees on appeal.

In this case, the Trial Court granted summary judgment in favor of Mother. Concerning summary judgment, our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\* \* \*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

The issue in this case involves interpretation of a life insurance provision in an agreed permanent parenting plan. As this Court has held, an agreed parenting plan should

be interpreted as a binding agreement between the parents. *See Pierce v. Pierce*, No. W2017-02447-COA-R3-CV, 2018 WL 6070025, at *7 (Tenn. Ct. App. Nov. 19, 2018); *see also Sharp v. Stevenson*, No. W2009-00096-COA-R3-CV, 2010 WL 786006, at *6 (Tenn. Ct. App. Mar. 10, 2010) ("[O]ur holding reflects the intention of the legislature that parenting plans be interpreted as binding agreements between two parents who, although divorced, continue in their roles of parents."). Concerning written agreements, our Supreme Court has stated:

> The interpretation of written agreements . . . is a matter of law that this Court reviews de novo on the record according no presumption of correctness to the trial court's conclusions of law. *See Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn. 1999); *Union Planters Nat'l Bank v. Am. Home Assurance Co.,* 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993). A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. *Christenberry v. Tipton,* 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 889-90 (Tenn. 2002). This Court's initial task in construing the [written agreement] is to determine whether the language is ambiguous. *Id.* at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Id.* If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. *Id.*
>
> Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975).

*Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

During this appeal, the parties have agreed that the children had a vested interest in the proceeds of Father's life insurance policy and that the 2017 permanent parenting plan is controlling in this case. We need not address that issue any further. The life insurance provision in that permanent parenting plan stated as follows:

> Both shall insure his/her own life in the minimum amount of $300.000.00 by whole life or term insurance. Until the child support obligation has been completed, each policy shall name the child/children as sole irrevocable primary beneficiary, with the ☒ other parent other _____, as trustee for the benefit of the child(ren), to serve without bond or accounting.

The Trial Court found that the children were not entitled to the entire $300,000 of Father's life insurance policy but only the amount sufficient to cover Father's remaining child support obligation. However, Mother contends on appeal that the children were entitled to the entire $300,000 policy. Based on the language in the 2017 permanent parenting plan, we agree with Mother.

The life insurance provision is clear that the parents were to each keep a $300,000 insurance policy for the children so long as the child support obligation continued. According to the 2017 plan, the children were to be named as the sole beneficiaries to the $300,000 life insurance policy with the other parent to be named as the trustee for the children. Therefore, Mother was to be the trustee for the children's benefit on Father's life insurance policy. Although Ms. Hester's attorney argued during oral argument that equity demands the result by the Trial Court limiting recovery of the life insurance proceeds due to Mother's noncompliance with the life insurance provision in the plan, we note that the children are the intended beneficiaries for the policy, not Mother. Mother is only the trustee for the children's benefit. The children, as the actual beneficiaries of the policies, should not be punished for Mother's noncompliance with this provision.

Additionally, we note that both parents had agreed to insure their respective lives with a $300,000 life insurance policy to benefit the children "[u]ntil the child support obligation has been completed." Mother had an obligation to provide such a life insurance policy for the children, not just Father. Although Mother had not complied, she was required by the plan to insure her life with an equal life insurance policy despite her not having a child support obligation under any permanent parenting plan in the record. If the life insurance provision was intended to secure only the amount of Father's child support obligation, it is unlikely that the same provision of the plan would have required Mother to have an equivalent life insurance policy in the absence of a child support obligation.

Furthermore, Ms. Hester argues that the total amount of remaining child support when the initial 2009 permanent parenting plan was entered into totaled close to $300,000.[2] However, that amount had not been changed or lowered to correlate to the remaining child support in any subsequent plan. We note that Father's child support obligation was $547 per month in the April 2017 permanent parenting plan. When the 2017 plan was developed, the children were ages 12 and 10. At the time, Father's remaining child support obligation would have been substantially less than the agreed upon $300,000 life insurance policy

---

[2] In her response to Mother's motion for summary judgment, Ms. Hester stated that when the initial permanent parenting plans were entered into, Father "was looking at a total of $297,600 to be paid as child support."

provision, supporting that the life insurance provision was not meant solely to secure the remaining child support obligation.[3]

We make no determination concerning whether the children had a vested right in the life insurance policy that could not be modified after the initial permanent parenting plan. Ms. Hester's concession in this case makes it unnecessary to make such a determination. Furthermore, we note that our conclusion regarding the amount of life insurance proceeds to which the children are entitled would be the same whether the 2009 permanent parenting plan or the 2017 permanent parenting plan were controlling. Neither plan provided that the life insurance benefits were intended to secure only the amount of the remaining child support obligation. The reference to child support in the provision at issue only provided a timeframe for which the parents were to continue the life insurance requirement.

On appeal, Mother argues that the children had a vested interest in the entire $300,000 life insurance proceeds and cited to our Supreme Court's decision in *Holt v. Holt*. 995 S.W.2d 68, 77 (Tenn. 1999) ("[W]e find that the divorce decree creates in [the child] a vested right to any life insurance policy obtained by the Decedent that satisfies the mandate in the decree."). However, Ms. Hester cites to this Court's opinion in *Layton v. Life USA*, No. W1999-02274-COA-R3-CV, 2000 WL 633443 (Tenn. Ct. App. May 12, 2000), as being more persuasive in this case. We find that *Layton* is distinguishable from the present case. In *Layton*, this Court held that the children had a vested interest in the father's life insurance proceeds but limited their recovery to the father's child support obligation. *Id.* at 8-11. However, we note that the parents in *Layton* had not entered into an agreed permanent parenting plan with a life insurance provision that included a specific amount of life insurance to which the children were entitled. *Id.* at *1-2. In response to a petition filed by the mother in *Layton*, the trial court entered a consent order requiring the father to provide proof that the children were his irrevocable beneficiaries on his existing policy so long as he had a child support obligation for them. *Id.* at *2. The consent order entered by the trial court in *Layton* did not specify an amount of life insurance the father was required to maintain for the children and stated that it was understood that the father's current life insurance may not cover his entire child support obligation. *Id.* at *2. Unlike *Layton*, Mother and Father in the present case had an agreed permanent parenting plan which included a life insurance provision requiring both parents, not just the parent owing child support, to each maintain a life insurance policy of $300,000 on their respective lives for the benefit of the children until the child support obligation was completed.

In this case, we simply hold that the most recent permanent parenting plan, which the parties agreed on appeal was controlling in this case, does not limit the children's life

---

[3] Ms. Hester stated in her response to the summary judgment motion that at the time of Father's death, he only had a remaining child support obligation of $43,760.

insurance proceeds to only the amount of Father's outstanding child support obligation. If the parents intended for the life insurance policy to secure only the child support obligation still owed at Father's death, the parties could have easily stated that in the plan. By limiting the children's proceeds from the life insurance policy, the Trial Court was reading into the provision what simply was not there. We must give effect to the literal meaning of the clear and unambiguous language of the life insurance provision of the parenting plan. The judgment is modified so that the children are entitled to $300,000 of the life insurance proceeds as required by the agreed permanent parenting plan.

We next address Mother's issue concerning whether the Trial Court erred by declining to award Mother her attorney's fees. Mother has two theories on which she claims she should have been awarded attorney's fees: (1) that such an award of attorney's fees was required by Mother and Father's marital dissolution agreement and (2) that Tennessee Code Annotated § 36-5-103(c) entitled her to an award of attorney's fees as the prevailing party on the motion for summary judgment.

Concerning Mother's argument that she is entitled to an award of attorney's fees at the trial court based on the provision in Mother and Father's marital dissolution agreement, we find Mother's argument to be without merit. Mother and Father were the only parties to the marital dissolution agreement. Our Supreme Court has held that a contractual provision allowing the recovery of attorney's fees resulting from litigation was enforceable during trial court proceedings as well as on appeal. *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017). However, this case is distinguishable from *Eberbach* because Mother is trying to enforce a provision of her contract with Father against Ms. Hester. Ms. Hester, the respondent in this action, was not a party to the marital dissolution agreement. Therefore, Mother was not entitled to an award of attorney's fees from Ms. Hester in the Trial Court based on a provision from Mother and Father's marital dissolution agreement.

Mother further argues that she was entitled to an award of attorney's fees in the Trial Court based on Tennessee Code Annotated § 36-5-103(c) (Supp. 2020), which provides as follows:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed *in the court's discretion*, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

(Emphasis added.)

- 11 -

An award of attorney's fees pursuant to the above statute is discretionary, and we will not reverse a trial court's decision concerning attorney's fees except with an abuse of that discretion. *See* Tenn. Code Ann. § 36-5-103(c) (Supp. 2020). We will not substitute our judgment for that of the Trial Court, and we find no abuse of discretion in the Trial Court's decision not to award attorney's fees to Mother.

As her final issue, Mother has requested an award of attorney's fees incurred on appeal. As previously stated, we have determined that Mother is not entitled to an award of attorney's fees based on the marital dissolution agreement to which Ms. Hester was not a party. Furthermore, an award of attorney's fees based on Tennessee Code Annotated § 36-5-103(c) is at our discretion. *See Eberbach*, 535 S.W.3d at 477 ("[W]hen appellate attorney's fees are requested pursuant to statutes . . . which expressly permit the court to exercise its discretion, the Court of Appeals should analyze any such request by exercising its discretion to determine whether an award to the prevailing party is appropriate."). During this appeal, Mother raised issues concerning whether the Trial Court erred in the amount of life insurance proceeds awarded to the children and by declining to award Mother her attorney's fees. In light of all relevant considerations, including that Ms. Hester was partially successful on appeal, we exercise our discretion and decline to award Mother her attorney's fees incurred on appeal.

### Conclusion

Based on the foregoing, we modify the Trial Court's judgment and hold that the children are entitled to $300,000 of the life insurance proceeds. We affirm the Trial Court's judgment declining to award Mother her attorney's fees. We deny Mother's request for attorney's fees incurred during this appeal. This cause is remanded to the Trial Court for collection of costs assessed below. The costs on appeal are assessed one-half against the appellant, Kimberly Anne McGrath, and her surety, if any, and one-half against the appellee, Melissa Powers Hester.

s/ D. Michael Swiney
D. MICHAEL SWINEY, CHIEF JUDGE

- 12 -