FILED
01/10/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 30, 2021 Session

# IN RE CONSERVATORSHIP OF JOHN F. RESS

**Appeal from the Chancery Court for Sullivan County**
**No.    18-CK-41241(C)     E.G. Moody, Chancellor**
_____

**No. E2021-00134-COA-R3-CV**
_____

This appeal concerns the trial court's interpretation of a divorce decree and an incorporated marital dissolution agreement as applied in a conservatorship once the husband died. The wife appeals the trial court's use of parol evidence in reaching its decision. We reverse the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and KRISTI M. DAVIS, JJ., joined.

Jason A. Creech and Matthew F. Bettis, Johnson City, Tennessee, for the appellant, Diane Marie Ress.

R. Lee McVey, II, Kingsport, Tennessee, for the appellee, Judith M. Williamson, Conservator for John F. Ress.

**OPINION**
**I.  BACKGROUND**

On August 5, 2014, appellant Diane Marie Ress ("Wife") filed a complaint for divorce in the Sullivan County Chancery Court. John F. Ress ("Husband") answered and filed a counter-complaint. Husband's counsel moved the trial court to appoint a guardian *ad litem* for Husband. The trial court appointed local counsel as Husband's guardian *ad litem*. By order entered July 5, 2016, the trial court approved a report from the guardian *ad litem* concluding that Husband was incapable of important decision making due to mental and physical health issues.

During the pendency of the divorce, Judith M. Williamson, Husband's sister ("Conservator"), petitioned to become and was ultimately appointed as Husband's conservator. Conservator was substituted for Husband in the divorce action. The parties proceeded to mediation, and on June 5, 2018, following the mediation between them, Conservator and Wife signed an agreement prepared by the mediator, retired Judge Seeley. The **mediation agreement** stated, in part:

> 1. Husband shall receive the Island home and all its contents, his vehicles, boat, motorcycle and any other personal property in his or his Conservator's possession. Husband shall be responsible for all his debts, including any owed on the Island home. Husband has no money in any retirement account. His Conservator has $25,000 in a checking account which shall remain his.

> 2. Wife shall pay to Conservator for the use and benefit of Husband $250,000 from her 401k by way of Qualified Domestic Relations Order.

> 3. At Husband's death, should Wife survive him, Husband or his Conservator shall transfer all Husband's assets to Wife as set forth in the QDRO and shall constitute a claim against his estate.

Thereafter, Wife and Conservator entered into a **Marital Dissolution Agreement** ("MDA"). Conservator signed the MDA first, Wife signed next, and it was filed with the trial court on September 12, 2018. The MDA memorialized the terms of the mediation agreement but also contained additional terms. Some of these additional terms are as follows:

> 10. **Estate Claim**: At Husband's death, should Wife survive him, his Conservator shall transfer all of Husband's remaining[1] assets to Wife, including, but not limited, to the funds received by QDRO in paragraph 5(b). The parties understand and agree that this Marital Dissolution Agreement provision shall constitute a valid claim against Husband's estate by Wife. Husband, through his Conservator, shall draft and/or execute and/or enter whatever estate planning documents and/or court orders that are necessary to carry out the terms of this provision, including but not limited to filing a Motion and Order to Amend the Property Management Plan to allow changes to Husband's estate planning to carry out the terms of this agreement.

> 11. **Miscellaneous**: (a) The parties hereby acknowledge that this Agreement contains an equitable settlement of any property rights between them . . . (l)

---

[1] Conservator's counsel handwrote the word "remaining" into the MDA and initialed the change. He is deceased.

This Agreement constitutes the entire understanding of the parties, and it supersedes any and all prior agreement between them. There are no representations or warranties, other than those expressly set forth herein.

On September 28, 2018, the trial court entered a final decree of divorce which incorporated the MDA.[2] In the final decree, the trial court ruled "that the Mediated Marital Dissolution Agreement makes adequate, sufficient and equitable provision for the settlement of any and all property rights between the parties." The trial court ordered "that the Mediated Marital Dissolution Agreement, executed by the parties is approved by the Court and incorporated herein." The trial court further ordered "that the Conservator Judith M. Williamson has the authority to execute all provisions of the Marital Dissolution Agreement, and the property management plan is amended as may be necessary to accomplish the same."

Conservator filed the mediated agreement as part of the estate planning documents in her amended inventory and property management plan. She did not include a copy of the MDA. Husband passed away on December 26, 2019. Wife was named as the beneficiary of the account holding the retirement funds received by Husband, and the remaining amount transferred to her upon his death.

On April 3, 2020, Wife filed this action against Conservator in the Sullivan County Chancery Court to enforce the final decree and to find Conservator in civil contempt, alleging that Conservator failed to draft Husband's estate planning documents to ensure that the *entirety* of his remaining assets transferred to Wife in accordance with the MDA. Wife preemptively filed a motion in limine to bar Conservator from introducing the mediation agreement as parol evidence.

A hearing on the motion was held on August 28, 2020, where counsel presented arguments. No testimony or exhibits were entered into evidence. The trial court then ordered the parties to each file a memorandum of law and a proposed order. Conservator's filing argued that the MDA requiring her to draft estate planning documents and to transfer all of Husband's remaining assets to Wife upon his death was "ambiguous." Wife's filing attached the handwritten mediation agreement to show that it was parol evidence which would contradict the plain and ordinary meaning of the MDA. Conservator claimed that she did not read the MDA until a year after signing it.

By order entered January 19, 2021, the trial court denied Wife's motion and found that a "latent ambiguity exists" between the mediation agreement, the MDA, and the final decree of divorce. The trial court's final order did not state what the ambiguity was, but found that Wife's interpretation of the three documents would yield an inequitable result,

---

[2] The mediation agreement itself was not filed with the final decree of divorce.

- 3 -

resulting in Husband's "estate receiving nothing and Wife receiving all of the assets the parties held as marital property prior to the divorce." The trial court ruled that Conservator had complied with her obligations, resulting in Wife receiving more retirement funds than she originally gave Husband and his estate receiving approximately $140,339. This appeal followed.

## II. ISSUE

We restate the sole dispositive issue on appeal as follows: Whether the trial court erred in its use of parol evidence in interpreting the final divorce decree and the incorporated marital dissolution agreement.

## III. STANDARD OF REVIEW

Marital dissolution agreements are contracts and are to be treated as such. *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561-62 (Tenn. Ct. App. 2003). The interpretation of contracts is a matter of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). We review a trial court's conclusions of law de novo with no presumption of correctness. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). We review a trial court's findings of fact de novo upon the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009).

## IV. DISCUSSION

Conservator argues that her counsel's interlineation of the word "remaining" to the MDA indicates the parties' intent "for Husband to only return the remaining QDRO funds to Wife at his death, not his entire estate." Conservator contends that, at the very least, the interlineation created an ambiguity, requiring consideration of parol evidence for clarity.

This court has provided the following guidance in resolving a dispute concerning the interpretation of a contract:

> [O]ur task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. A determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide. The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. The parties' intent is presumed to be that specifically expressed in the body

of the contract. In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy.

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006) (internal citations and quotations omitted). A court will not look beyond the four corners of the document to determine the parties' intent when the contract is unambiguous. *Williams v. Larry Stoves and Lincoln Mercury, Inc.*, No. M2014-00004-COA-R3-CV, 2014 WL 5308634, at *4 (Tenn. Ct. App. Oct. 15, 2014). An ambiguity "does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions." *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994) (citation omitted). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

The contract at issue provides, in pertinent part, as follow:

At Husband's death, should Wife survive him, his Conservator shall transfer all of Husband's remaining assets to Wife, including, but not limited, to the funds received by QDRO in paragraph 5(b). The parties understand and agree that this Marital Dissolution Agreement provision shall constitute a valid claim against Husband's estate by Wife. Husband, through his Conservator, shall draft and/or execute and/or enter whatever estate planning documents and/or court orders that are necessary to carry out the terms of this provision, including but not limited to filing a Motion and Order to Amend the Property Management Plan to allow changes to Husband's estate planning to carry out the terms of this agreement.

A plain reading of the contract does not yield an ambiguity requiring clarification.

Conservator next argues that the court's reference to the parties' "mediated marital dissolution agreement" further creates an ambiguity. We disagree. The parties crafted the MDA following mediation. Reference to the MDA as a mediated document does not create an ambiguity without placing a strained construction on the trial court's words. The trial court made no mention of the mediation agreement itself. Instead, the court specifically incorporated the MDA into its order with instruction for Conservator to carry out the parties' intent found in the MDA by amending the property management plan.

As an alternative argument, Conservator posits that the trial court's ruling should be upheld to prevent an inequitable outcome pursuant to Tennessee Code Annotated section

36-4-121.[3]  Section 36-4-121 requires the trial court to make an equitable division of marital property in a divorce action.  However, the legislature provided the following caveat applicable in cases such as the one before us:

> Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties regarding the division of property.

Tenn. Code Ann. § 36-4-121(g)(1).  With all of the above considerations in mind, we hold that the trial court erred in its consideration of parol evidence and refusal to enforce the MDA as written.  We reverse the decision of the trial court and remand for enforcement of the MDA.

## V.  CONCLUSION

For the reasons stated above, we reverse the decision of the trial court.  The case is remanded for whatever proceedings may be necessary and consistent with this opinion.  Costs of the appeal are taxed to the appellee, Judith M. Williamson, Conservator for John F. Ress.

_____
JOHN W. MCCLARTY, JUDGE

---

[3] "In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just."